**FILED**

SEP 27 2021

Clerk of the Appellate Courts
Rec'd By _____

IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT NASHVILLE
Assigned on Briefs June 21, 2021

## BETHANY SHELTON v. HOBBS ENTERPRISES, LLC, ET AL.

**Appeal from the Court of Workers' Compensation Claims
No. 2017-06-2203    Joshua Davis Baker, Judge**

---

### No. M2020-01220-SC-R3-WC – Mailed August 24, 2021

---

Bethany Shelton ("Employee") filed a petition for benefit determination against Hobbs Enterprises, LLC ("Employer") alleging an injury to her right shoulder suffered in a work-related accident on August 26, 2017. She sought temporary total, permanent partial, and continued medical benefits. Following the issuance of a dispute certification notice, Employer moved for summary judgment on the basis the only medical testimony, from the Employee's treating orthopedic surgeon, Dr. Sean Kaminsky, was insufficient as a matter of law to establish causation. The Court of Workers' Compensation Claims (the "trial court") denied the motion and denied Employer's motion to reconsider. Employer sought an expedited appeal before the Workers' Compensation Appeals Board, but then sought and was granted a dismissal of that appeal. A trial was held, after which the trial court denied Employee's claim on the ground she had failed to meet her burden to establish her right shoulder injury arose primarily out of and in the course and scope of her employment with Employer. Employee filed a motion to reconsider, which the trial court denied. She appealed directly to the Supreme Court. The appeal has been referred to the Special Workers' Compensation Appeals Panel for a hearing and a report of findings of fact and conclusions of law pursuant to Tennessee Supreme Court Rule 51. We affirm the judgment of the Court of Workers' Compensation Claims.

**Tenn. Code Ann. § 50-6-225(a)(1) (Supp. 2020) Appeal as of Right;
Decision of the Court of Workers' Compensation Claims Affirmed.**

DON R. ASH, SR. J., delivered the opinion of the court, in which ROGER A. PAGE, J. and WILLIAM B. ACREE, SR. J., joined.

Joseph M. Dalton, Jr. and Catherine S. Hughes, Hendersonville, Tennessee, for the appellant, Bethany Shelton

J. Allen Callison, Nashville, Tennessee, for the appellees, Hobbs Enterprises, LLC, and Norguard Insurance Co.

## OPINION

### Factual and Procedural Background

At the time of her claimed work-related injury, Ms. Shelton (Employee) was 38 years old. Prior to her work for Employer, Employee was a stay-at-home mom and had worked in the gas station industry. She was hired by Employer on December 13, 2015, as a cashier at one of its gas stations/markets. Among her job duties were dealing with customers, selling lottery tickets, cleaning, and stocking the cooler. She had cleaning duties such as lifting bags of trash, and her stocking duties included lifting crates of soft drinks. At some point, Ms. Shelton was asked by her immediate supervisor to train to become an assistant manager. During this time, she continued to perform her duties as a cashier.

Ms. Shelton testified at trial. According to her testimony, she suffered an injury to her right shoulder on August 26, 2017, while removing a heavy bag of trash from an outside trash container. She testified she was pulling the bag of trash from the container when she felt a sharp pain in her right shoulder. Ms. Shelton attempted to complete her task and then went inside to the restroom, where she rubbed her shoulder. Employee testified she was uncertain what she had done to her shoulder, but she notified her district manager in person and was instructed to let her manager know if the condition persisted or worsened. According to Ms. Shelton, her condition did worsen. She testified she already had a regularly scheduled monthly appointment with her pain management physician, Dr. Nguyen, and she informed him of her injury at that visit.

Ms. Shelton was seen by Dr. Nguyen on August 16, 2017, ten days prior to her alleged incident and injury. She had come under Dr. Nguyen's care for pain management related to a back injury resulting from a motor vehicle accident in approximately 2012 or 2013. At her August 16, 2017 visit with Dr. Nguyen, Employee complained about right shoulder pain starting about one month prior. She reported the shoulder pain was intermittent with activity. Ms. Shelton testified at trial she had experienced prior shoulder pains and spasms following her earlier motor vehicle accident, and those pains and spasms were what she was referring to when she saw Dr. Nguyen on August 16, 2017. Dr. Nguyen's note makes no reference to spasms or to prior complaints of shoulder pain.

On August 31, 2017, five days after the incident at work about which Ms. Shelton

testified, she again saw Dr. Nguyen. At this visit, Employee reported her right shoulder was still not better and she was unable to lift above shoulder height. She reported a pain level tolerable with treatment, 7/10 after work and 5/10 before work. Dr. Nguyen noted she was still performing work requiring a substantial amount of actual lifting and carrying. Dr. Nguyen did not record any new report or complaint by Employee of a work-related incident or injury subsequent to her prior August 16, 2017 visit. Dr. Nguyen refilled Ms. Shelton's pain medications and noted: "Suspicious for rotator cuff injury. Pending insurance approval for MRI." Employee underwent an MRI on September 20, 2017. The MRI report indicated a torn rotator cuff as well as significant degenerative abnormalities.

Employee testified she returned to work but was unable to perform the lifting required in her position. Employer provided her with work accommodations beginning October 5, 2017.

On October 16, 2017, Employee presented to the Summit Medical Center Emergency Department for evaluation of shoulder pain. According to the report from the visit, Ms. Shelton reported an injury on July 28, 2017, and presented the hospital staff with her September 20, 2017 MRI. Further according to the report, the MRI appeared to show "injuries that are significantly chronic in appearance." The report indicates Employee stated she "awoke yesterday with increased pain in her shoulder. No injury. She also reports the increased pain is from catching a bag of ice that slipped." On physical examination, Ms. Shelton was noted to have "no swelling or deformity of the shoulder, no pain to palp[ation], reports increased pain with abduction, reports pain is better with ext[ernal] rot[ation], n/v intact." The primary impression was shoulder pain, and she was discharged with instructions to follow up with her primary care physician or other designated or consulting physician.

Ms. Shelton saw Dr. Nguyen on October 25, 2017, for a one-month follow up for pain management with respect to her right shoulder injury, which he described in his note as a rotator cuff tear. Dr. Nguyen noted Employee reported pain of 8/10 without medication and 5/10 with medication. He noted limited range of motion from the pain. His assessments included pain in the right shoulder and laceration of the muscles and tendons of the rotator cuff of the right shoulder.

On October 25, 2017, Employer terminated Ms. Shelton's employment.

On November 2, 2017, Employee was seen by orthopedic surgeon Dr. Sean Kaminsky, on referral. Dr. Kaminsky testified by deposition. According to the doctor's notes, Ms. Shelton had been referred for evaluation of right shoulder pain which began after lifting a bag of garbage on August 26, 2017. Dr. Kaminsky testified he was not

-3-

provided information regarding, nor was he aware of, her earlier August 16, 2017 visit to Dr. Nguyen with a complaint of right shoulder pain commencing approximately one month before. He was also not aware of her October 2017 Summit Emergency Department visit during which Ms. Shelton indicated her injury date as July 28, 2017. She rated her pain a 9/10. Employee reported difficulty lifting her arm, constant pain, difficulty sleeping on her right shoulder, and difficulty with activities of daily living including outstretched or overhead reach. Dr. Kaminsky reviewed Ms. Shelton's September 2017 MRI, which demonstrated "fairly extensive rotator cuff and degenerative abnormalities of the shoulder joint." On examination, he found she was clearly in some pain, had limited mobility in her right shoulder, weakness of the rotator cuff, and crepitation of the shoulder joint. His assessment was primary osteoarthritis of the right shoulder, a complete tear of the right rotator cuff, degenerative tear of the glenoid labrum of the right shoulder, and bicipital tendinitis of the right shoulder. He discussed treatment options including surgery, set in place work modifications, discussed home exercises, and requested approval for surgery.

Dr. Kaminsky again saw Employee on December 18, 2017. She continued to be in significant pain and was being treated by pain management. Ms. Shelton felt her symptoms were worsening. Dr. Kaminsky noted she had a "difficult shoulder condition compounded by both the arthritis, massive rotator cuff tear, atrophy in conjunction with pain management issues." He again discussed surgery with Employee, and she wished to proceed.

Dr. Kaminsky performed surgery on Ms. Shelton's right shoulder on January 10, 2018. Dr. Kaminsky's preoperative diagnoses were: 1) right shoulder glenohumeral arthrosis; 2) right shoulder impingement syndrome; 3) right shoulder acromioclavicular arthrosis; 4) right shoulder synovitis; and 5) right rotator cuff tear. Dr. Kaminsky's postoperative diagnoses omitted any finding of a right shoulder rotator cuff tear. His operative note explains:

> The intraoperative diagnostic arthroscopy demonstrated diffuse advanced and severe arthritic changes and cartilage loss involving both the glenoid and humeral articular surfaces. Bare subchondral exposed bone was noted on both surfaces. Remnant islands of cartilage were noted particularly on the superior aspect of the glenoid. However, the majority of the articular cartilage was completely lost along the glenoid with occasion[al] diffuse degenerative labral tearing. Mild synovitis was present at the base of the biceps. Erythematous synovitis was noted diffusely about the joint capsule, labrum, and articular rotator cuff. Inspection of

- 4 -

the articular rotator cuff also demonstrated intact surfaces with the exception of synovitis, but no evidence of full thickness or partial thickness tearing. There was no loose body in the axillary recess or subcoracoid spaces.

In his deposition testimony, Dr. Kaminsky explained the apparent contradiction between the preoperative MRI and diagnoses and the intraoperative diagnostic arthroscopy and postoperative diagnoses as pertaining to a rotator cuff tear. According to Dr. Kaminsky, the MRI report represented a false positive for a rotator cuff tear. During the intraoperative diagnostic arthroscopy, he was able to look directly at the shoulder joint and found there actually was no tear.

Dr. Kaminsky continued to follow Employee postoperatively, seeing her in January, February, March and April of 2018. Dr. Kaminsky testified by her April visit, Ms. Shelton was "doing quite well and she was released to activities as tolerated." His office notes from that last visit reflect she was "quite pleased with improvements. She notices the ability to perform more her daily activities in comparison to prior to her surgery. She is able to reach overhead and behind her back with improved mobility. She had less pain with the use of the arm additionally." Dr. Kaminsky placed no restrictions on Employee. On May 1, 2018, he placed Ms. Shelton at maximum medical improvement and assigned her a permanent partial impairment rating of five percent to the body as a whole.

On direct examination, Dr. Kaminsky testified with respect to causation as follows:

> Q. Doctor, was the history that Ms. Shelton provided you consistent with the nature of the injuries sustained?
>
> A. Well, she had a specific history of injury and did demonstrate fairly extensive rotator cuff damage. That lifting injury may have exacerbated some underlying shoulder abnormalities.
>
> Q. So then the history she provided to you was consistent with the type of injury you were able to diagnose?
>
> A. Yes.
>
> ...
>
> Q. Doctor, are the opinions you've expressed today based upon a reasonable degree of medical certainty consistent with

your expertise in orthopedic medicine?

A. Yes.

On cross examination, Dr. Kaminsky was shown the records from Employee's August 16, 2017 visit to Dr. Nguyen and her October 2017 visit to the Summit Emergency Department. After reviewing these records and after explaining the difference between the MRI findings and his own intraoperative findings regarding a rotator cuff tear, Dr. Kaminsky further testified with respect to causation as follows:

> Q. When you were in her shoulder during the operation, did you see any evidence of an acute injury, or was [sic] all of the problems with the shoulder, so to speak, were they chronic?
>
> A. The most significant finding for her was the arthritic changes of the shoulder joint. There were areas that have fairly significant loss of the surfaces, the articular cartilage on the ball and socket joint. Those had obviously occurred over the course of time.
>
> There was evidence of what we call impingement syndrome and arthritic changes of the AC joints. So there did appear to be chronicity of these – of these findings.
>
> Q. Doctor, having reviewed the medical records, having reviewed medical records from other providers, the operative notes, are you able to give an opinion within a reasonable degree of medical certainty as to what the cause of her shoulder surgery was?
>
> A. She – in her notes she told me she had an injury on August 26th that initiated her pain. I do see some information to the contrary, that she was having some shoulder pain that was preceding that. It may be contributions from both pre-existing and/or those findings. It's a bit difficult to say. She definitely had some chronicity to both the arthroscopic and imaging findings of her shoulder.

On redirect examination, Dr. Kaminsky offered his final testimony regarding causation:

Q. Doctor, you indicated that there was quite a bit of chronic arthritis present in the shoulder joint?

A. Yes.

Q. If we take her history to be correct, that she stated she aggravated her shoulder by lifting that bag of trash out of the trash can, would the nature of that aggravation be significant enough to suggest that as a result of that activity the surgery was necessary?

A. It's certainly possible. (Emphasis added.)

On June 28, 2018, Employee filed a petition for benefit determination. Ms. Shelton sought temporary total, permanent partial, and continued medical benefits. A dispute certification notice was filed on September 27, 2018. On August 23, 2019, Employer moved for summary judgment on the basis Dr. Kaminsky's testimony regarding causation was legally insufficient. The trial court denied the motion, Hobbs Enterprises moved to reconsider, and the court denied this motion as well. Employer sought an expedited appeal before the Workers' Compensation Appeals Board, but then sought and was granted a dismissal of that appeal. The case was tried on June 2, 2020. The trial court noted while both parties provided proof regarding the history of the claim and circumstances of Employee's termination, "the threshold requirement is that she must prove by a preponderance of the evidence that her shoulder injury arose primarily out of and in the course and scope of her employment to receive any benefits." The trial court concluded that "Dr. Kaminsky's testimony is insufficient to satisfy the preponderance standard. Because Ms. Shelton bore the burden of proof and failed to satisfy it, the Court denies her request for relief and dismisses her claim with prejudice to its refiling."

Ms. Shelton filed a motion to reconsider on the ground the trial court incorrectly stated in its order that her prior motor vehicle accident had occurred one month prior to her alleged employment incident and injury, rather than several years prior, and this influenced the trial court's conclusion on causation. Employee further contended Dr. Kaminsky's opinion was sufficient to establish causation, particularly given Ms. Shelton suffered a rotator cuff tear separate and apart from her degenerative changes. According to her, such an injury supported a finding of causation. The trial court denied Ms. Shelton's motion. The court explained:

While the Court acknowledges its factual misstatement about the timing of Ms. Shelton's car accident, this misstated fact had no bearing on the Court's decision. Rather, the Court based its decision solely on Dr.

Kaminsky's tepid testimony, stating "it's possible" the work accident exacerbated an underlying shoulder problem. The Court maintains Ms. Shelton's expert medical proof did not meet the standard of proof required for the Court to find her injury arose primarily out of the course and scope of her employment.

## Analysis

### *Standard of Review*

Findings of fact are reviewed "de novo upon the record of the workers' compensation court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(a)(2) (2014 & Supp. 2020). When the trial court has had the opportunity to hear in-court testimony and observe the witness's demeanor, considerable deference must be afforded the trial court's factual determinations. Kilburn v. Granite State Ins. Co., 522 S.W.3d 384, 389 (Tenn. 2017) (citing Madden v. Holland Grp. of Tenn., Inc., 277 S.W.3d 896, 898 (Tenn. 2009)). When the issues involve expert medical testimony contained in the record by deposition, the reviewing court may draw its own conclusions as to those issues because the weight and credibility of the witness must be drawn from the contents of the depositions. Id. (citing Foreman v. Automatic Sys., Inc., 272 S.W.3d 560, 571 (Tenn. 2008)). The interpretation and application of workers' compensation statutes are questions of law which are reviewed de novo with no presumption of correctness. Mansell v. Bridgestone Firestone N. Am. Tire, LLC, 417 S.W.3d 393, 399 (Tenn. 2013). Workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2014) (applicable to injuries occurring on and after July 1, 2014).

### *Causation*

The sole issue before the Panel on this appeal is causation. As with each of the other elements of her claim, Employee has the burden of proving causation by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2014 and Supp. 2020). Except in the most obvious cases, causation must be proven by expert medical evidence. Trosper v. Armstrong Wood Products, Inc., 273 S.W.3d 598, 604 (Tenn. 2008). An injury arises primarily out of and in the course and scope of employment only if the employee shows by a preponderance of the evidence that her employment contributed more than fifty percent (50%) in causing the injury, considering all causes. Tenn. Code

Ann. § 50-6-102(14)(B) (Supp. 2020). To establish an injury causes disablement or the need for medical treatment, the employee must show by a reasonable degree of medical certainty the employment contributed more than fifty percent (50%) in causing the disablement or need for medical treatment, considering all causes. Tenn. Code Ann. § 50-6-102(14)(C) (Supp. 2020). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (Supp. 2020). The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians, is presumed to be correct on the issue of causation; however, this presumption is rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (Supp. 2020).

Employee contends the trial court erred in concluding Dr. Kaminsky's testimony was insufficient under the above statutory standards to establish causation with respect to her shoulder injury and the need for her shoulder surgery. Ms. Shelton specifically contends the trial court's mistake regarding the timing of her prior automobile accident "necessarily diminished the weight given to the treating physician's opinion testimony on the issue of causation; thereby disregarding the statutory presumption of correctness on the issue when there was no rebuttal evidence to his opinion." We disagree.

In its order denying Employee's motion to reconsider, the trial court acknowledged its misstatement regarding the date of Ms. Shelton's prior motor vehicle accident. The trial court explained, however, this was irrelevant to the court's determination of causation. According to the trial court, its determination was based solely on the insufficiency of Dr. Kaminsky's testimony. Contrary to Employee's assertion, the trial court's mistake with respect to this single fact, did not "necessarily diminish[] the weight given to" Dr. Kaminsky's testimony by the trial court. Rather, it was Dr. Kaminsky's testimony itself which, as the trial court explained, failed to establish causation under the statutory standards. When confronted with Ms. Shelton's medical records from Dr. Nguyen and from the Summit Emergency Department, both of which indicated she had complained of shoulder pain commencing approximately one month prior to her claimed August 26, 2017 work incident, and based on his own intraoperative diagnostic findings, Dr. Kaminsky could say no more than "it's a bit difficult to say" whether the claimed work incident contributed to Employee's shoulder condition and "[i]t's certainly possible" the claimed incident aggravated Ms. Shelton's existing shoulder condition necessitating surgery.

Employee argues this testimony was, nonetheless, sufficient because it was supported by the medical finding of a complete rotator cuff tear, was supported by her own lay testimony, and was entitled to a presumption of correctness. We again disagree.

-9-

First, while Ms. Shelton asserts no fewer than six times in her brief she suffered a rotator cuff tear, the evidence establishes she did not. According to the only expert medical proof, the testimony of Dr. Kaminsky, the preoperative MRI represented a false positive report of a rotator cuff tear. Consequently, all preoperative suggestions stating the Employee suffered a rotator cuff tear were incorrect. Dr. Kaminsky's intraoperative diagnostic arthroscopy and his testimony definitively established the absence of either a full thickness or a partial rotator cuff tear. Simply put, there was no medical evidence of a traumatic injury to Ms. Shelton's shoulder to support her claim of aggravation and causation.

Second, under the applicable law, Dr. Kaminsky's testimony was not subject to being bolstered by Employee's lay testimony in order to reach a level sufficient to establish causation. Ms. Shelton incorrectly cites and relies on case law preceding the amendments to the Workers' Compensation Law, which now expressly sets forth the standards for causation and eliminates any favoritism to the employee. As the Panel explained in Willis v. All Staff, No.2016-01143-SC-R3-WC, 2017 WL 3311318 at **3-4 (Tenn. Workers Comp. Panel Aug. 3, 2017):

> The foregoing statutory standards have replaced those that previously applied, including the standard necessary to establish causation, which permitted a trial court to "award benefits based upon medical testimony that the employment 'could or might have been the cause' of the employee's injury when there is also lay testimony supporting a reasonable inference of causation." *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 274–275 (Tenn. 2009) (citing *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005)). In addition, Tennessee Code Annotated section 50-6-116, which previously required a liberal construction of the workers' compensation law, has been amended to now provide that the workers' compensation statutes "shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction[,] and this chapter shall not be construed in a manner favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2014).

As in Willis, the medical testimony here is insufficient to establish causation under the applicable statutory standards.

Finally, Employee's reliance on the statutory rebuttable presumption in favor of the treating physician, here Dr. Kaminsky, is misplaced. This is not a case in which there is competing medical testimony. Rather, this is a case in which the testimony of the treating physician is legally insufficient to establish causation. It is only when the

- 10 -

testimony meets the minimum statutory standards in the first instance there may be a rebuttable presumption of correctness in favor of the causation opinion of the treating physician. See, e.g., Willis, *supra*; Panzarella v. Amazon.com, Inc., No. E2017-01135OSC-R3-WC, 2018 WL 2363592 (Tenn. Workers Comp. Panel May 16, 2018).

## Conclusion

For the foregoing reasons, the judgement of the Court of Workers' Compensation Claims is affirmed. Costs on appeal are taxed against Plaintiff-Appellant Bethany Shelton (Employee) and her surety, for which execution may issue if necessary.

_____

DON R. ASH, SENIOR JUDGE

IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT NASHVILLE

## BETHANY SHELTON v. HOBBS ENTERPRISES, LLC. ET AL.

**Appeal from the Court of Workers' Compensation Claims
No. 2017-06-2203   Joshua Davis Baker, Judge**

_____

**No. M2020-01220-SC-R3-WC**

_____

**FILED**

SEP 2 7 2021

Clerk of the Appellate Courts
Rec'd By _____

## JUDGMENT ORDER

This case is before the Court upon the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference.

Whereupon, it appears to the Court that the Memorandum Opinion of the Panel should be accepted and approved; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court.

Costs are assessed to Plaintiff-Appellant Bethany Shelton (Employee) and her surety, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM